IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> Halifax Investment Services, Ltd. <br><br> Defendant. | CIVIL ACTION NO.: <br><br> COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I. SUMMARY

1. On October 18, 2010, the CFTC adopted new regulations implementing certain provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010) ("Dodd-Frank Act"), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), and the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq.*, with respect to off-exchange foreign currency ("forex") transactions. Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Commodity Exchange Act ("the Act"), as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), an entity must be registered if it wants to solicit or accept orders on a leveraged or margined basis from a non-Eligible Contract Participant ("ECP") in connection with forex transactions as a retail foreign exchange dealer ("RFED") or futures commission merchant. Pursuant to CFTC Regulation ("Regulation") 5.3(a)(6)(i), 17 C.F.R.

§ 5.3(a)(6)(i) (2012), in connection with retail forex transactions, all RFEDs must be registered with the CFTC as of October 18, 2010.

2. Beginning on October 18, 2010, and continuing to the present (the "relevant period"), Defendant Halifax Investment Services, Ltd. ("Halifax"), upon information and belief, solicits or accepts orders from non-ECPs located in the United States ("U.S. customers") on a leveraged or margined basis in connection with retail forex transactions and is, or offers to be, the counterparty to these retail forex transactions without being registered as an RFED with the CFTC, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012).

3. By virtue of this conduct and the further conduct described herein, Halifax has engaged, is engaging, or is about to engage in acts and practices in violation of the Act, as amended, and the Regulations.

4. Accordingly, pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended, 7 U.S.C. § 2(c)(2), the Commission brings this action to enjoin Halifax's unlawful acts and practices and to compel its compliance with the Act, as amended, and the Regulations and to further enjoin Halifax from engaging in certain commodity or forex-related activity, including, soliciting or accepting orders from U.S. customers and offering to be the counterparty to customers' forex transactions, without appropriate registration with the Commission.

5. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6. Unless restrained and enjoined by this Court, Halifax likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

7. Section 6c(a) of the Act, as amended, 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

8. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2) and 6c of the Act, as amended, 7 U.S.C. §§ 2(c)(2) and 13a-1.

9. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e), because Halifax transacts business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III. PARTIES

10. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

11. Defendant **Halifax Investment Services Ltd** is located at Governor Phillip Tower, Level 40, 1 Farrer Place, Sydney NSW 2000 Australia. Halifax has never been registered with the Commission in any capacity.

## IV. STATUTORY BACKGROUND

12. For the purposes of trading retail forex, a "retail foreign exchange dealer" is defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2012), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for certain persons not relevant to this Complaint.

13. An ECP is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." Section 1a of the Act, as amended 7 U.S.C. § 1a.

## V. FACTS

14. On October 18, 2010, the Commission adopted new regulations implementing certain provisions of the Dodd-Frank Act and the CRA. For the purposes of retail forex transactions, the new regulations, among other things, require RFEDs to register with the CFTC.

15. On information and belief, Halifax, solicits or accepts orders from U.S. customers who are not ECPs to open leveraged forex trading accounts through Halifax's website, http://www.halifax.com.au.

16. Customers open trading accounts by submitting an online account application through Halifax's website. There is nothing in the online account application stating Halifax does not accept U.S. customers.

17. Halifax's website includes a Forex Product Disclosure Statement ("Halifax Forex PDS") which states that "each transaction which is agreed and entered into with a client will be entered into by Halifax as principal." The website also states that customers are "dealing with Halifax as counterparty to every transaction."

18. Halifax's online account application does not seek any information about prospective customers' ability to send or receive actual delivery of foreign currencies or customers' business need for foreign currency.

19. Halifax's online account application does not inquire as to whether a prospective customer is an ECP or about a prospective customer's savings and investments. The online account application does not inquire if a prospective customer has assets in excess of $5 million.

20. The Halifax Forex PDS also states that Halifax is not involved in the physical delivery of trades, disclosing that forex transactions are "OTC" (over-the-counter) derivatives which do not require the physical exchange of one currency for another.

21. On September 11, 2010, Halifax applied for membership with the National Futures Association ("NFA")[1] and registration with the CFTC to become an introducing broker ("IB") in order to introduce U.S. customers to an RFED registered with the Commission.

22. On September 17, 2010, NFA advised Halifax that in order to conduct forex business going forward, it would be required to be fully registered with the CFTC by October 18, 2010.

23. During the registration process, NFA learned that Halifax accepted customer funds. On October 30, 2010, NFA advised Halifax that because it was accepting funds from customers, and an IB cannot accept customer funds, Halifax would have to register as an RFED and create a separate entity to register as an IB.

24. On November 3, 2011, Halifax advised NFA that it would "postpone its application." On December 10, 2011, Halifax withdrew its application.

---

1. The NFA is a registered self-regulatory organization which has been delegated certain authority and responsibilities delegated to it by the CFTC including, but not limited to, registration functions under the Commodity Exchange Act and reviewing applicants to determine fitness to become or retain NFA membership.

25. On September 30, 2011, despite the NFA's notice that Halifax was required to register with the CFTC in order to conduct forex business, Halifax responded to a prospective U.S. customer that he needed only to provide certified copies of his U.S. passport and driver's license to open an account.

26. Thus, Halifax has been and is acting as an RFED and continues to do so by soliciting orders from and offering to act as counterparty to U.S. customers to trade forex.

27. By the date of the filing of this complaint, Halifax has not registered with the Commission as an RFED or in any other capacity.

28. Furthermore, Halifax is not exempt from registration.

### VI. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

#### COUNT ONE:
#### VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, AS AMENDED: FAILURE TO REGISTER

29. Paragraphs 1 through 29 are realleged and incorporated herein.

30. During the relevant period, Halifax solicited or accepted orders from non-ECPs in connection with leveraged or margined forex transactions at an RFED. Halifax engages in this conduct without being registered as an RFED, as required by Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012), all in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

31. Each day that Halifax has engaged in this conduct since October 18, 2010 is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

## COUNT TWO:
## VIOLATION OF REGULATION 5.3(a)(6)(i)
## FAILURE TO REGISTER AS A RETAIL FOREIGN EXCHANGE DEALER

32. Paragraphs 1 through 29 are realleged and incorporated herein.

33. During the relevant period, Halifax is, or offers to be, the counterparty to retail forex transactions without being registered as an RFED in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012).

34. Each day that Halifax has failed to register as an RFED since October 18, 2010 is alleged as a separate and distinct violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012).

### VII. RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A. An order finding that Halifax violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

B. An order finding that Halifax violated Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012);

C. An order of permanent injunction prohibiting Halifax, and any other person or entity associated with it, from engaging in conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

D. An order of permanent injunction prohibiting Halifax, and any other person or entity associated with it, from engaging in conduct in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012);

E.  An order of permanent injunction prohibiting Halifax, and any other person or entity associated with it or its website, from operating its website while in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2012);

F.  An order of permanent injunction prohibiting Halifax and any successor thereof, from, directly or indirectly:

1)  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

2)  Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2012)) ("commodity options"), swaps (as that term is defined in Section 1a(47) of the Act, as amended, and as further defined by Commission regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for its own personal account or for any account in which it has a direct or indirect interest;

3)  Having any commodity futures, options on commodity futures, commodity options, swaps, security futures products, and/or forex contracts traded on its behalf;

4)  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving

commodity futures, options, commodity options, swaps, security futures products, and/or forex contracts;

5) Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, security futures products, and/or forex contracts;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

G. Enter an order requiring that Halifax, as well as any of its successors, disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act, as amended, and the Regulations, including pre and post-judgment interest;

H. Enter an order directing Halifax and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between it and any of the customers whose funds were received

by them as a result of the acts and practices, which constituted violations of the Act, as amended, and the Regulations as described herein;

I. Enter an order requiring Halifax to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the greater of: (1) triple its monetary gain for each violation of the Act, as amended, and the Regulations or (2) $140,000 for each violation committed on or after October 23, 2008;

J. Enter an order requiring Halifax to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

K. Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Respectfully submitted,

COMMODITY FUTURES TRADING COMMISSION

/s/ David A. Terrell

David A. Terrell
Senior Trial Attorney
Illinois ARDC No. 6196293
dterrell@cftc.gov

Elizabeth M. Streit
Chief Trial Attorney
Illinois ARDC No. 06188119

Scott R. Williamson
Deputy Regional Counsel
Illinois ARDC No. 06191293

Rosemary Hollinger
Regional Counsel
Illinois ARDC No. 3123647

Attorneys for Plaintiff
Commodity Futures Trading Commission

525 West Monroe Street, Suite 1100
Chicago, Illinois 60661


(312) 596-0539 (Terrell)
(312) 596-0537 (Streit)
(312) 596-0560 (Williamson)
(312) 596-0538 (Hollinger)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)